The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LAURIE KRAUSE, on Behalf of Herself
and on Behalf of All Others Similarly
Situated, ,

Plaintiffs,

v.

EXPEDIA GROUP, INC. and EGENCIA,
LLC,

Defendants.

No.: 2:19-cv-00123-BJR

DEFENDANTS' MOTION TO
DISMISS AND/OR TO COMPEL
PLAINTIFF TO PARTICIPATE IN
ARBITRATION

NOTE ON MOTION CALENDAR
NOTE DATE:  MAY 31, 2019

ORAL ARGUMENT REQUESTED

# I.  INTRODUCTION

Plaintiff filed a collective action against Expedia Group, Inc. and Egencia LLC ("Egencia") under the Fair Labor Standards Act ("FLSA"). She alleges that Egencia was her employer under the FLSA, misclassified her as an independent contractor, and failed to properly pay her overtime under the FLSA. What Plaintiff intentionally omits is that she did not have a contractual relationship with Egencia. Rather, Egencia, a travel management company, contracted with WSOL, Inc. ("WSOL"), a well-established customer service company with dozens of clients, to provide contact center support services, and WSOL contracted with Plaintiff and her company, Champion SG Concepts Inc. ("Champion"). Plaintiff also fails to mention that she signed independent contractor agreements ("Agreements") with WSOL that require individual arbitration in Dallas, Texas. Plaintiff's omissions appear to be an attempt to avoid her commitment to arbitrate disputes.

In this motion, Egencia asks the Court to find that Plaintiff is bound to individually arbitrate her claims in Texas and to dismiss this collective action. Although not a signatory to Plaintiff's Agreements, Egencia can enforce the arbitration clause under the doctrine of equitable estoppel and as a third-party beneficiary of the Agreements. This Court should thus either (a) compel individual arbitration in Texas or (b) hold that there is a valid arbitration clause, Egencia can enforce the clause, and Plaintiff's claims are covered by it. Either way, the Court should dismiss Plaintiff's Complaint.

## II.  CERTIFICATION OF MEET AND CONFER

Egencia certifies that its counsel met and conferred by telephone and through correspondence with Plaintiff's counsel regarding whether this motion was necessary.

## III.  STATEMENT OF FACTS

There is no direct contractual relationship between Plaintiff and Egencia. Egencia contracted with WSOL, and WSOL contracted with Plaintiff and her corporation, Champion, as an independent contractor. Plaintiff signed different WSOL Agreements and schedules over the

DEFENDANTS' MOTION TO DISMISS AND/OR TO COMPEL
PLAINTIFF TO PARTICIPATE IN ARBITRATION – 1
Cause No. 2:19-CV-00123-BJR
502207328 v1

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

relevant time period. Declaration of Kim Houlne ("Houlne Decl."), Ex. 3-7.

**A.    Egencia Contracted with WSOL to Provide Outsourced Customer Service Support**

In October 2012, Egencia and WSOL entered into a Master Services Agreement that defines the relationship between the two companies. Houlne, Ex. 1 ("MSA"). The MSA states that WSOL is a vendor "in the business of providing telephone, email [and] other contact center or business process support on an outsourced basis." MSA at 1. The MSA is not exclusive, and either company can enter into the same relationship with other companies. MSA at 5 (¶ 20.2). WSOL provides services to many clients, including Michael's, Microsoft, and T-Mobile. Houlne Decl. ¶ 3. WSOL's specific services for Egencia are listed in a Statement of Work. MSA at 2 (¶ 3.1); Ex. 2 ("SOW"). The "service description" in the SOW lists "Agent Responsibilities" including: "[a]nswer incoming calls from Egencia customers currently traveling or interested in purchasing/researching travel by following standard scripts and procedures." *Id.* ¶ 2.1.3.

The MSA makes clear that it "is not intended to create any relationship other than Vendor as an independent contractor performing Services," and "[u]nder no circumstance shall one Party's employees be construed to be employees of the other Party." MSA at 5 (¶ 20.4). It further states that WSOL "shall be solely responsible for hiring, managing, and compensating all agents, supervisors, and other Vendor-supplied support staff." *Id.* at 7 (¶ B-2.1).

Egencia had no direct involvement with paying or scheduling Plaintiff. Rather, it paid WSOL based on forecasted "Productive Hours," and WSOL was responsible to provide that service support. *Id.* at 7, 9 (¶ B-3.1, B-6.4). WSOL warranted that it "shall comply with all Applicable Laws," and indemnified Egencia for "claims, damages, losses, suits, actions, demands… liabilities of any kind" based on an alleged violation of the law or a breach of a warranty in the MSA. *Id.* at 4 (¶ 14.2, 15.1).

**B.    Plaintiff Contracted with WSOL to Provide Customer Service Support to Egencia**

On December 14, 2016, Plaintiff signed an independent contractor agreement with

DEFENDANTS' MOTION TO DISMISS AND/OR TO COMPEL
PLAINTIFF TO PARTICIPATE IN ARBITRATION – 2
Cause No. 2:19-CV-00123-BJR
502207328 v1

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  WSOL. Houlne Decl. ¶ 7, Ex. 3.[1] She initialled each page. This agreement clearly provides that

2  Plaintiff and her company are independent contractors of WSOL:

> 8. Independent Contractor. This Agreement shall not render the Contractor an employee, partner, agent of, or joint venturer with the Company for any purpose. The Contractor is and will remain an independent contractor in his or her relationship to the Company…The Contractor shall have no claim against the Company hereunder or otherwise for vacation pay, sick leave, retirement benefits,…overtime benefits or employee benefits of any kind. The Contractor understands that this is project work and the contractor is paid based on production and service provided. The Contractor understands the Company contracts exclusively with business entities. Business entities include Sole Proprietorships,…C Corporations, and S Corporations.

8  *Id.*, Ex. 3 at 2. This independent contractor provision is bolded and separately initialled by

9  Plaintiff.

10  The 2016 agreement provides for individual arbitration and waives participation in

11  collective action:

> 11. Arbitration. Any claims, disputes or controversies between the Company and Contractor, whether arising out of the terms of this Agreement or otherwise, shall be solely determined and settled by arbitration conducted in Dallas County, Texas, in accordance with the rules of the American Arbitration Association ("AAA"), and the judgment upon award may be entered in any court having jurisdiction thereof. All claims by or between the Company and the Contractor must be submitted on an individual basis. No claims may be arbitrated on a class or collective action basis unless required by applicable law. Both parties expressly waive any right with respect to any claims to submit, initiate, or participate in a representative capacity or as a plaintiff, claimant or member in a class action, collective action, or other representative or joint action, regardless of whether the action is filed in arbitration or in court. The arbitrator shall not have the power to treat any claim as a collective, class or consolidated claim. In the event there is a question of enforceability of this provision of the Agreement, it shall be decided only by a court of competent jurisdiction, not the arbitrator or the AAA.

20  *Id.* at 3. The 2016 agreement specifies Texas law.[2] It also contains a clause that incorporates any

21  schedules (such as A and B) into the Agreements and terminates prior contracts.[3] *Id.* at 3-4.

---

[1] Plaintiff was already a party to an independent contractor agreement with WSOL that she signed in 2014. The 2016 agreement canceled and replaced the 2014 agreement. Houlne Decl. ¶ 6.

[2] "10. Choice of Law. The laws of the state of Texas shall govern the validity of this Agreement, the construction of its terms and the interpretation of the rights and duties of the parties hereto." Houlne Decl. Ex. 3, at 3.

[3] "18. Entire Understanding. This document and any schedule(s) attached constitute the entire understanding and agreement of the parties, and any and all prior agreements, understandings, and representations are hereby terminated and canceled in their entirety and are of no further force and effect." Houlne Decl. Ex. 3, at 4.

DEFENDANTS' MOTION TO DISMISS AND/OR TO COMPEL
PLAINTIFF TO PARTICIPATE IN ARBITRATION – 3
Cause No. 2:19-CV-00123-BJR
502207328 v1

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

In 2016, Plaintiff also signed a Contractor Code of Conduct that listed numerous duties toward "clients" and "customers," including extensive provisions regarding the handling of confidential client data. *Id.*, Ex. 4. In addition, Plaintiff signed two schedules, A and B, that listed her responsibilities and compensation for WSOL's "Egencia Program." *Id.*, Ex. 6, 7. Schedule A listed her general duties and compensation as a contractor on the program, including to provide "assistance to corporate travelers using a variety of interactions including but not limited to chat, email, inbound phone and outbound phone." *Id.*, Ex. 6. Schedule B listed Plaintiff's duties and compensation as an "Egencia Program Resource Expert," including to "provide customer service and support to assist other Independent Contractors with subject matter and client questions pertaining to Egencia." *Id.*, Ex. 7. One duty listed in Schedule B is: "Adhere to all facets of the Independent Contractor contract for this program." *Id.*

On February 26, 2019, after she filed the present lawsuit against Egencia, and at her own request, Plaintiff entered into a new independent contractor agreement with WSOL. *Id.* ¶ 8, Ex. 5. The 2019 agreement also contains a broad mutual arbitration provision:

> 1) Contractor and WSOL, LLC mutually agree to resolve any justiciable disputes between them exclusively through final and binding arbitration instead of filing a lawsuit in court. This arbitration agreement is governed by the Federal Arbitration Act ("FAA") and shall apply to any and all claims arising out of or relating to this Agreement, Contractor's classification as an independent contractor, Contractor's provision of Contracted Services, the payments received by Contractor providing services, the termination of this Agreement, and all other aspects of Contractor's relationship with WSOL, LLC, past, present or future, whether arising under federal, state or local statutory and/or common law, including without limitation…Fair Labor Standards Act (or its state or local equivalents), state and local wage and hour laws, state and local statues or regulations addressing the same or similar subject matters, and all other federal, state or local claims arising out of or relating to Contractor's relationship or the termination of that relationship with WSOL, LLC.
>
> …
>
> 2) Any claims, disputes or controversies between WSOL, LLC and the Contractor, whether arising out of the terms of this Agreement or otherwise, shall be solely determined and settled by arbitration conducted in Dallas County, Texas, ….
>
> …
>
> 5) Contractor agrees and acknowledges that entering into this arbitration agreement does not change Contractor's status as an independent contractor in fact and in law, that

DEFENDANTS' MOTION TO DISMISS AND/OR TO COMPEL
PLAINTIFF TO PARTICIPATE IN ARBITRATION – 4
Cause No. 2:19-CV-00123-BJR
502207328 v1

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   Contractor is not an employee of WSOL, LLC or its customers and that any disputes in
2   this regard shall be subject to arbitration as provide in this agreement.

3   *Id.* at 5-6. This provision applies to "past, present or future" disputes. This Agreement also
4   contains a broad class action waiver, *id.*, and a Texas choice of law provision, *id.* at 6. Like the
5   2016 Agreement, it contains a clause that incorporates any schedules (such as Schedules A and
6   B) into the Agreements, and terminates prior contracts. *Id.* at 7.

7                          **IV.  ARGUMENT**

8   **A.      The Federal Arbitration Act Creates a Presumption in Favor of Arbitration**

9           The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate
10  disputes arising out of transactions involving interstate commerce "shall be valid, irrevocable,
11  and enforceable, save upon such grounds as exist at law or in equity for the revocation of any
12  contract." 9 U.S.C. § 2. "By its terms, the [FAA] 'leaves no place for the exercise of discretion
13  by a district court, but instead mandates that district courts shall direct the parties to proceed to
14  arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v.*
15  *Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Accordingly, a court's role is
16  limited to determining: (1) whether an arbitration agreement exists between the parties, and, if
17  so, (2) whether the scope of that agreement to arbitrate encompasses the claims at issue. *Id.*

18          Regarding the first prong, "arbitration is a matter of contract and a party cannot be
19  required to submit to arbitration any dispute which he has not agreed so to submit." *Kramer v.*
20  *Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013). However, the U.S. Supreme Court has
21  held that non-signatories may compel arbitration under the FAA under certain circumstances:

22          Because "traditional principles" of state law allow a contract to be enforced by or against
23          nonparties to the contract through "… incorporation by reference, third party beneficiary
            theories, waiver and estoppel…."

24  *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009).
25  Thus, federal courts look to state law to determine whether a non-signatory to an agreement
26  containing an arbitration provision is nonetheless entitled to enforce the provision. *Kramer*, 705

---

DEFENDANTS' MOTION TO DISMISS AND/OR TO COMPEL
PLAINTIFF TO PARTICIPATE IN ARBITRATION – 5
Cause No. 2:19-CV-00123-BJR
502207328 v1

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

F.3d at 1126.

Regarding the second prong, "[t]he scope of an arbitration agreement is governed by federal substantive law." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999). If a contract contains an arbitration clause, there is a presumption that the dispute is arbitrable. *AT & T Techs., Inc. v. Comm'ns Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Simula*, 175 F.3d at 719.

Here, an arbitration provision covers Plaintiff's claims and, as addressed in detail below, Egencia can enforce that provision under third-party beneficiary and estoppel doctrines.

**B.    Egencia Can Enforce the Arbitration Provision in Plaintiff's WSOL Agreements**

   **1.    Texas Law Applies When Evaluating Enforceability of the Arbitration Provision**

The Agreements that Plaintiff signed with WSOL contain a Texas choice of law provision. That choice of Texas law should prevail over the law of the forum, Washington, to the extent any conflict exists.[4] In this case, whether Texas law applies to enforcement of arbitration is decided by federal common law and the Restatement (Second) of Conflicts of Laws. *Lagrone v. Advanced Call Center Tech. LLC*, 2014 WL 4966738, *4 (W.D. Wash. 2014) (*citing Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1297 (9th Cir. 1997)). Section 187 of the Restatement applies when contracts include a choice of law provision. *See In re Vortex Fishing Sys., Inc.*, 277 F.3d 1057, 1069 (9th Cir. 2002) (*citing Chan*). Under Section 187, courts should enforce the parties' contractual choice of law if the issue "is one which the parties could have resolved by an explicit provision in their agreement directed to that issue," *id.* (*quoting* § 187(1)), or, even without this, the chosen law applies unless (a) "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice" or (b)

---

[4] Choice of law need only be decided if there is a difference between the chosen law and forum law. *Joseph v. TrueBlue, Inc.*, 2015 WL 2237936, *2 (W.D.Wash. 2015). Here, Washington and Texas do not generally differ regarding third-party beneficiary issues, but Texas law is more developed in relation to equitable estoppel issues.

DEFENDANTS' MOTION TO DISMISS AND/OR TO COMPEL
PLAINTIFF TO PARTICIPATE IN ARBITRATION – 6
Cause No. 2:19-CV-00123-BJR
502207328 v1

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

"application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue" and that state's law would apply in the absence of a choice of law clause. *Id.*

Here, the issue of whether WSOL's customer can invoke the Agreements' arbitration provision against an independent contractor like Plaintiff is one that could have been resolved by an explicit provision in the Agreements. *See Id.* (*citing* § 187(1)). Moreover, Texas has a substantial relationship to this case because Plaintiff's claims are based on work she did under WSOL Agreements specifying Texas law with a Texas-based company to fulfill WSOL's contract with Egencia. Thus, to the extent differences exist between Texas and Washington law regarding enforcement of the arbitration provision, Texas law applies.

### 2. Egencia Can Enforce the Arbitration Provision in the Agreements as a Third-Party Beneficiary to that Contract

Egencia is a third-party beneficiary of Plaintiff's Agreements with WSOL. Non-parties can enforce arbitration agreements if they are third-party beneficiaries. *Carlisle*, 556 U.S. at 631. Under both Texas and Washington law, third-party beneficiaries like Egencia may enforce arbitration provisions if the terms of the contract necessarily require the promisor to confer a benefit upon the third person, which demonstrates that the parties contemplated a benefit to the third person. *Lonsdale v. Chesterfield*, 99 Wn.2d 353, 361, 662 P.2d 385 (1983); *In re Rolland*, 96 S.W.3d 339, 344 (Tex.App. 2001) ("If parties to a contract agree to confer certain contractual benefits on a third party, that third party may invoke the contract's arbitration clause."). Both contracting parties must intend that a third-party beneficiary contract be created, *Ege v. Express Messenger Systems, Inc.*, 2017 WL 87841, *3 (W.D.Wash. 2017), *aff'd* 745 Fed. Appx. 19 (9th Cir. 2018); however, "[t]he 'intent' which is a prerequisite of the beneficiary's right to sue is 'not a desire or purpose to confer a particular benefit upon him,' nor a desire to advance his interests, but an intent that the promisor shall assume a direct obligation to him." *Lonsdale*, 99 Wn.2d at 361; *see also Stine v. Stewart*, 80 S.W.3d 586, 591 (Tex. 2002) ("Although a third party must be

DEFENDANTS' MOTION TO DISMISS AND/OR TO COMPEL
PLAINTIFF TO PARTICIPATE IN ARBITRATION – 7
Cause No. 2:19-CV-00123-BJR
502207328 v1

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

more than an incidental beneficiary, a beneficiary is not required to show that the parties executed the contract solely for its benefit."). The key is whether performance under the contract would directly benefit that party. *Lonsdale*, 99 Wn.2d at 361;[5] *Stine*, 80 S.W.3d at 589.

Put simply, when someone (like Plaintiff) contracts with a service provider to help meet an obligation to a third party, that third party is benefited by and has the right to enforce the contract. *Ege*, 2017 WL 87841 at *3. For example, in *Ege*, plaintiff drivers (like Plaintiff here) signed "Owner/Operator Agreement[s]" with Subcontracting Concepts CT ("SCI"), which (like WSOL) was not made a party to the action. *Id.* at *1. The defendant, transportation broker Express Messenger Systems ("EMS"), was not a signatory to the agreements with plaintiffs. *Id.* "While Plaintiffs and SCI were the only signatories, the Agreement defined the rights and responsibilities Plaintiffs would have in their relationship with logistics companies like [EMS]." *Id.* Plaintiffs sued EMS, asserting state law claims for a proposed class of delivery drivers who allegedly worked for EMS in Washington. *Id.* at *2.

The Complaint alleged that EMS intentionally misclassified plaintiffs and putative class members as contractors rather than employees and failed to provide overtime. *Id.* As a non-signatory, EMS moved to compel arbitration under the Owner/Operator Agreements. The court granted that motion, holding that the plaintiff drivers' performance under the Owner/Operator Agreements with SCI required the drivers to confer a benefit on customers, including EMS.[6] *Id.* at *3 ("Under the terms of the contract, [Plaintiffs] could not fully perform [their] promise[s] to [deliver packages] without directly benefitting the [Defendant]."). The Ninth Circuit affirmed,

---

[5] For example, in *Lonsdale*, a buyer purchased portions of a land development and, as part of the consideration for the sale, assumed the seller's obligation to install a water system for the entire development, including portions sold to the petitioners. 99 Wn.2d at 355-56. "Under the terms of the contract, [the buyer] could not fully perform its promise to install the water system without directly benefitting the petitioners as deeded owners of the lots. Petitioners were thus intended third party beneficiaries of the performance due under the contract." *Id.*

[6] The court rejected the drivers' argument that EMS was merely an incidental beneficiary of the agreement because any reference to logistics company customers was "generic" and "oblique," and held that it was unnecessary for EMS to be cited in the agreement by name. *Ege*, 2017 WL 87841 at *3. Texas law is the same. *In re Citgo Petroleum Corp.*, 248 S.W.3d 769, 776 (Tex. App. 2008) ("It is not essential to the creation of a right in an intended beneficiary that he be identified when a contract containing the promise is made.")

DEFENDANTS' MOTION TO DISMISS AND/OR TO COMPEL
PLAINTIFF TO PARTICIPATE IN ARBITRATION – 8
Cause No. 2:19-CV-00123-BJR
502207328 v1

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  stating: "We conclude that appellants' performance under the agreements necessarily and

2  directly benefitted [EMS], and therefore [EMS] was a third-party beneficiary [because drivers']

3  work under the agreement--delivering parcels--was an integral part of [EMS's] business." 745

4  Fed.Appx. 19.

5        The facts here are similar to *Ege*, but even more clearly support an intent to benefit

6  Egencia. First, as in *Ege*, Plaintiff's services for WSOL directly benefited Egencia. Egencia

7  contracted with WSOL to obtain a specified amount of customer service support, and WSOL

8  contracted with Plaintiff and others to perform those services. Plaintiff's performance of her

9  contract with WSOL necessarily and directly benefited Egencia by providing it with customer

10  service support. Second, unlike *Ege*, Egencia is specifically named in Schedules A and B to the

11  WSOL Agreements, which suggests that the parties intended Egencia to be a third-party

12  beneficiary. *See JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 599 (5th Cir.

13  2007) (specifically naming a nonparty to a contract if the contract shows an intent to make that

14  nonparty a third-party beneficiary). In fact, the schedules list Plaintiff's contract obligations that

15  necessarily benefited Egencia. For example, one obligation listed for WSOL's Egencia program

16  was for Plaintiff to "[a]dhere to all facets of the Independent Contractor contract for this

17  program." Houlne Decl., Ex. 7. One such "facet" was the individual arbitration provision in the

18  WSOL Agreements.[7]

19        As a third-party beneficiary of the Agreements, Egencia can enforce the arbitration

20  provision.

21      **3.**     **Egencia Can Enforce the Arbitration Provision Under Equitable Estoppel**

22        Whether or not Egencia is a third-party beneficiary, it can enforce arbitration under

23   

24  [7] This express reference to the "facets" of the Agreements clearly shows that Egencia is, and was intended to be, a third-party beneficiary of those Agreements. It is in WSOL's interest to limit Egencia's exposure to litigation in any way it can as it has agreed to indemnify Egencia under MSA ¶ 15.1. *See, e.g., In re Citgo*, 248 S.W.3d at 777 (non-defendant company's "contractual duty to indemnify [non-signatory defendant] suggests one reason [company] would intend to give [non-signatory defendant] the right to enforce the arbitration agreement between [company and plaintiff]").

DEFENDANTS' MOTION TO DISMISS AND/OR TO COMPEL
PLAINTIFF TO PARTICIPATE IN ARBITRATION – 9
Cause No. 2:19-CV-00123-BJR
502207328 v1

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

equitable estoppel. Texas law applies here to the extent it differs from Washington law. The Texas Supreme Court has recognized that "[a] person who has agreed to arbitrate disputes with one party may in some cases be required to arbitrate related disputes with others." *Meyer v. WMCO-GP, LLC*, 211 S.W.3d, 302, 304 (Tex. 2006). It explained:

> Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances. First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.

*Id.* at 306 (*quoting Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 527 (5th Cir.), *cert. denied*, 531 U.S. 1013 (2000)). A body of Texas law has developed involving these two types of equitable estoppel: direct-benefits estoppel and substantially-interdependent estoppel.[8]

### a.   Equitable Estoppel Applies Because Plaintiff Derived a Direct Benefit from the Contract with WSOL

Initially, this Court should apply direct-benefits estoppel to prohibit Plaintiff from refusing to arbitrate her disputes. *Meyer* held that a signatory plaintiff who derives a "direct benefit" from a contract with an arbitration clause is equitably estopped from refusing arbitration. *Id.* at 305. A direct benefit exists if the signatory plaintiff's right to recover turns on the existence of the contract that contains the arbitration clause. *Kyani, Inc. v. HD Walz II Ent., Inc.*, 2018 WL 3545072, *7 (Tex. App. 2018). The equitable theory of direct-benefits estoppel precludes a signatory claimant from having it "both ways," by "seek[ing] to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny[ing] arbitration's applicability because the defendant is a

---

[8] Washington courts have recognized substantially-interdependent estoppel. *e.g., East West Bank v. Bingham*, 992 F.Supp.2d 1130, 1133 (W.D.Wash. 2014), but have not yet addressed direct-benefits equitable estoppel.

DEFENDANTS' MOTION TO DISMISS AND/OR TO COMPEL
PLAINTIFF TO PARTICIPATE IN ARBITRATION – 10
Cause No. 2:19-CV-00123-BJR
502207328 v1

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   non-signatory." *Meyer*, 211 S.W.3d at 306.

2          The instant case is like *Randle v. Metropolitan Transit Authority of Harris County*, 2018

3   WL 4701567 (S.D.Tex. 2018), where the plaintiff filed suit under the FLSA against Metropolitan

4   Transit Authority ("Metro"), which contracted with Yellow Cab to provide Metro drivers for its

5   METROLift routes.[9] Yellow Cab entered into subcontractor agreements to provide those drivers.

6   *Id.* at *1. Plaintiff signed a written agreement with Yellow Cab to drive for Metro. *Id.* That

7   agreement contained an arbitration provision, but Metro was not a signatory. *Id.* The court held

8   that the key considerations for direct-benefits estoppel are (a) whether the signatory received

9   substantial and direct benefits under the contract containing the arbitration clause by suing the

10  non-signatory under that contract, (b) the relationship between the claims to be arbitrated and the

11  contract, and (c) whether equity prevents the signatory from avoiding the arbitration clause that

12  was part of that contract. *Id.* at *9. The court found that "Randle received direct benefits from the

13  Yellow Cab Agreements [because] [t]hose Agreements provided him with a METROLift route,

14  insurance that qualified him to drive for the METROLift service, and METROLift-compliant

15  equipment." *Id.* at *10. The court rejected Randle's argument that "his claims do not arise from

16  the Agreements, but under the FLSA," because he had to rely on the agreement to pursue his

17  claims:

18          While Randle's amended complaint makes no reference to the Yellow Cab Agreements,
            to prove his claims against Metro or Yellow Cab under the FLSA, Randle must rely on
19          those Agreements.
            …
20          Randle alleges that Metro was his employer that misclassified him as an independent
            contractor to avoid paying him overtime wages due under the FLSA. To prove that he is a
21          Metro employee with the right to overtime payments from Metro, Randle must rely on
            his Agreements with Yellow Cab. As Randle's reply to the motion to dismiss and compel
22          arbitration acknowledges, he "was assigned to work for Metro by Yellow Cab." His
            rights to work in the METROLift program are defined through his Yellow Cab
23          Agreements and the incorporation of the METRO Contract into those Agreements.

24  *Id.* This is exactly the situation presented here, as Plaintiff's claims are based on alleged work

25

26  ───────────────
    [9] METROLift provided public transportation services to elderly and disabled passengers. *Id.*

DEFENDANTS' MOTION TO DISMISS AND/OR TO COMPEL
PLAINTIFF TO PARTICIPATE IN ARBITRATION – 11
Cause No. 2:19-CV-00123-BJR
502207328 v1

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

that she performed for Egencia, and, as the Agreements show, all of that work was actually performed for WSOL, which contracted to provide services to Egencia. Without her Agreements with WSOL, Plaintiff would not have performed any of the work on which she bases her allegations. Like the plaintiff in *Randle*, Plaintiff is attempting to take advantage of the Agreements while seeking to avoid their individual arbitration provision. She cannot have it "both ways." *Meyer*, 211 S.W.3d at 306. The fact that her artful pleading omits any mention of WSOL or the Agreements does not alter the fact that her claims would not exist without the Agreements.[10] *See Randle*, 2018 WL 4701567 at *10.  Therefore, Egencia can enforce the arbitration provision through equitable estoppel. *See Id.*

### b.    Substantially-Interdependent Equitable Estoppel Applies Because Plaintiff Alleges Egencia is Her Employer

In addition, this Court can apply the substantially-interdependent doctrine to equitably estop Plaintiff from refusing to arbitrate her disputes. *Meyer*, 211 S.W.3d at 306. Plaintiff alleged that Egencia is her employer under the FLSA. Although she omitted any mention of WSOL, the evidence shows she contracted with WSOL to provide services to Egencia and, thus, her allegations against Egencia are that it is a "joint employer" together with (or standing in the shoes of) WSOL. Texas courts hold that allegations of "substantially interdependent and concerted misconduct by both the nonsignatory and…signatory" support applying equitable estoppel to enforce an arbitration clause. *E.g.*, *Wirth v. Ziba Enterprises, Inc.*, 2013 WL 4774088, *5 (N.D.Tex. 2013); *Nguyen v. Chi Man L.P.*, 2013 WL 12131203, *4 (W.D.Tex. 2013). "Plaintiff cannot bring entirely interdependent claims against both [signatory and nonsignatory] as his 'employers' under the FLSA and then assert that only [signatory] could

---

[10] *See also Oudraogo v. A-1 Inern. Courier Service, Inc.*, 2014 WL 1172581, *2 (S.D.N.Y. 2014) (FLSA claims for overtime "related to the Agreement-without which it would not exist"); *Ege*, 2017 WL 87841 at *5 ("In analyzing Plaintiffs' claims that [EMS] and SCI should face the same liability under the wage and employment statutes, the Court cannot evaluate the 'circumstances of the whole activity' of Plaintiffs' employment, and Defendant's responsibilities without 'touch[ing] matters covered by the [Agreement]").

DEFENDANTS' MOTION TO DISMISS AND/OR TO COMPEL PLAINTIFF TO PARTICIPATE IN ARBITRATION – 12
Cause No. 2:19-CV-00123-BJR
502207328 v1

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1     invoke Plaintiff's agreement to arbitrate." *Wirth*, 2013 WL 4774088 at \*5.  Here again, Plaintiff

2     should not be allowed to accomplish through artful pleading what could not be done if she had

3     fully plead the facts in this case.  Courts throughout the country agree that a plaintiff alleging an

4     employment relationship under the FLSA should be estopped from avoiding an arbitration

5     clause, where, as here, that clause is  set forth in an agreement under which the employee

6     worked. *See e.g., Bonner v. Michigan Logistics Inc.*, 250 F.Supp.3d 388, 399 (D.Ariz. 2017)

7     ("multiple district courts have emphasized in similar contexts that plaintiffs 'cannot be permitted

8     to argue Defendants are joint employers [under the FLSA] while, at the same time, argu[ing]

9     their relationship is not so close that all Defendants cannot compel arbitration'").[11]

10 **C.     Plaintiff's Claims Fall Within the Scope of the Arbitration Provision**

11     The 2019 arbitration provision covers "any and all claims arising out of or relating to this

12     Agreement, Contractor's classification as an Independent contractor, Contractor's provision of

13     services…past, present or future." Houlne Decl., Ex. 5. The 2016 provision covers "[a]ny claims,

14     disputes or controversies…whether arising out of the terms of this Agreement or otherwise…"

15     *Id.*, Ex. 3. These provisions plainly cover Plaintiff's claims that her classification under her

16     contract violated the FLSA. But even if the issue were in doubt, under the FAA any such doubts

17     must be resolved in favor of arbitration. *Randle*, 2018 WL 4701567 at \*11.

18 **D.     The Court Should Dismiss Plaintiff's Complaint**

19     This Court should find that there is a valid arbitration provision in the Agreements,

20     Egencia can enforce that provision as a third-party beneficiary or through application of direct-

21

---

22 [11] *See also,,e.g., Dennis v. United Van Lines, LLC*, 2017 WL 5054709, \*4 (E.D.Mo. 2017) ("Plaintiff cannot claim that [non-signatory and signatory] are his employers responsible for FLSA…violations yet deny [non-signatory] the

23 right to invoke the arbitration clause"); *Valdez v. Bags, Inc.*, 2016 WL 10932513, \*6 (S.D.Fla. 2016) ("We agree with Defendants that, given the sweeping nature of the complaint, which does not differentiate between Defendants

24 for purposes of the FLSA claims, the only natural consequence is an interpretation of concerted and interdependent conduct between the signatories and non-signatories for purposes of this motion [to compel arbitration, and] you

25 cannot have one without the other in these circumstances."); *Thompson v. Body Sculpt Int'l, LLC*, 2018 WL 3235545, \*8 (E.D.N.Y. 2018) (non-signatory could enforce arbitration clause because, by alleging "that all of the defendants were their joint employers under the FLSA and as such are all liable for the purported overtime

26 violations…, plaintiffs are estopped from arguing that only some of the defendants can enforce the [clause]").

DEFENDANTS' MOTION TO DISMISS AND/OR TO COMPEL
PLAINTIFF TO PARTICIPATE IN ARBITRATION – 13
Cause No. 2:19-CV-00123-BJR
502207328 v1

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

benefits or substantially-interdependent equitable estoppel, and Plaintiff's FLSA claims fall within the arbitration provision. There is a split of authority in the Ninth Circuit, however, as to how this Court should proceed from there. Some courts hold courts have authority to compel arbitration in another district. *U.S. ex rel. Turnkey Const. Services, Inc. v. Alacran Contracting LLC*, 2013 WL 6503307, *2-3 (E.D.Cal. 2013). Other courts disagree and hold that the case may be dismissed, but that courts lack authority to compel arbitration beyond their district. *Vogel v. Vogel*, 2014 WL 12575815, *2 (C.D.Cal. 2014). Either way, the courts agree that an errant lawsuit should be dismissed. *E.g.*, *Ege*, 2017 WL 87841 at *6 ("Because the Court finds that arbitration is the proper forum for all of Plaintiffs' claims to be heard, it will grant Defendant's motions to dismiss"); *Genias Graphics Gmbh v. Tecplot, Inc.*, 2013 WL 12092542, *3 (W.D.Wash. 2013) ("the Court has discretion to dismiss a case if it finds that all the claims before it are subject to mandatory arbitration"). Thus, based on the above-noted findings, the Court should either compel Plaintiff to arbitrate her claims individually in Dallas, Texas, and dismiss the action, or simply dismiss the action.

## V.  CONCLUSION

Egencia respectfully requests that the Court grant its Motion to Dismiss and/or to Compel Plaintiff to Participate in Arbitration for the reasons set forth herein.

DATED:  April 26, 2019

By: *s/ Patrick M. Madden*
By: *s/ Todd L. Nunn*
Patrick M Madden, WSBA #21356
Todd L. Nunn, WSBA #23267

K&L Gates LLP
925 4th Avenue, Suite 2900
Seattle, WA  98104-1158
Telephone:  (206) 623-7580
Facsimile:  (206) 623-7022
patrick.madden@klgates.com
todd.nunn@klgates.com

*Attorneys for Defendants*
*Expedia Group, Inc. and Egencia, LLC*

DEFENDANTS' MOTION TO DISMISS AND/OR TO COMPEL
PLAINTIFF TO PARTICIPATE IN ARBITRATION – 14
Cause No. 2:19-CV-00123-BJR
502207328 v1

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

<u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on April 26, 2019, that I caused the foregoing DEFENDANTS'

3

MOTION TO DISMISS AND/OR TO COMPEL PLAINTIFF TO PARTICIPATE IN

4

ARBITRATION to be filed electronically with the Clerk of the Court using the CM/ECF system,

5

which will send notification of such filing to the following:

6

7
Paul Woods
paul@paulwoodslawfirm.com

8
THE PAUL WOODS LAW FIRM
1001 Fourth Avenue, Suite 3200

9
Seattle, WA  98154
Telephone:  (425) 773-8109

10

11
Don J. Foty
Dfoty@kennedyhodges.com

12
Gabrial A. Assaad
GAssaad@kennedyhodges.com

13
KENNEDY HODGES, L.L.P.
4409 Montrose Blvd., Suit 200

14
Houston, TX  77006
Telephone:  (713) 523-0001

15
Facsimile:  (713) 523-1116

16
Attorneys for Plaintiff

17

18
DATED:  April 26, 2019          By: <u>s/ Patrick M Madden</u>
                                      Patrick M Madden, WSBA #21356

19

20
K&L Gates LLP
925 4th Avenue, Suite 2900

21
Seattle, WA  98104-1158
Telephone:  (206) 623-7580

22
Facsimile:  (206) 623-7022
patrick.madden@klgates.com

23
*Attorneys for Defendants*

24
*Expedia Group, Inc. and Egencia, LLC*

25

26

DEFENDANTS' MOTION TO DISMISS AND/OR TO COMPEL
PLAINTIFF TO PARTICIPATE IN ARBITRATION – 15
Cause No. 2:19-CV-00123-BJR
502207328 v1

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022