UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LAURIE KRAUSE, on Behalf of Herself And on Behalf of All Others Similarly Situated,

        *Plaintiff*,

        v.

EXPEDIA GROUP, INC. and EGENCIA, LLC,

        *Defendants*.

CASE NO. 2:19-cv-00123-BJR

ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION

## I. INTRODUCTION

Plaintiff Laurie Krause initiated this action against Defendants Expedia Group, Inc. ("Expedia") and Egencia, LLC ("Egencia") (collectively "Defendants") claiming a violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.[1] In her complaint, Plaintiff claims that Defendants intentionally misclassified her, and others in her position, as independent contractors in order to deny them overtime pay.[2]

---

[1] Defendants have requested oral arguments to address the pending motion. Dkt. No. 25. The Court, however, deems this matter appropriate to resolve without oral arguments and will therefore deny the request. *See Murcia v. Godfrey*, No. 19-0587, 2019 WL 3504124, at *1 n.1 (W.D. Wash. Aug. 1, 2019) (citing *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998)) (denying oral argument where "[t]he parties have thoroughly briefed the issues and oral argument would not be of assistance to the court").

[2] Plaintiff brings a putative class action seeking to represent a class of similarly situated travel consultants. *See* Dkt. No. 1.

1

Currently before the Court is Defendants' Motion to Dismiss and/or to Compel Plaintiff to Participate in Arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. ("FAA"). Dkt. No. 25. Having reviewed the motion, the opposition thereto, the record for the case, and the relevant legal authorities, the Court will deny the motion to dismiss, but grant the motion to compel arbitration and stay the current proceedings until the completion of arbitration in the parties' chosen venue. The reasoning for the Court's decision follows.

## II.   BACKGROUND

Plaintiff is a travel consultant, providing customer communications services for Defendants who operate an online travel management company. Dkt. No. 1 at ¶¶ 16, 19. Plaintiff and Defendants, however, have never entered into an employment or independent contractor agreement directly. Dkt. No. 25 at 2. Instead, Defendant Egencia, contracts with WSOL, LLC ("WSOL"), which provides telephone, email, and other contact center and business processing support. *Id.* at 3. WSOL, in turn, contracts with Plaintiff to provide customer service assistance to travelers in the form of chat, email, and phone. *Id.* at 3–6. WSOL and Plaintiff have entered into several contracts for this work since 2014. The latest of these agreements is entitled "Independent Contractor Agreement" ("2019 Agreement") and is accompanied by Schedule A, entitled "Egencia Program: Duties, Terms, and Compensation" ("2019 Schedule A"), both of which were signed on February 26, 2019. Dkt. No. 26-5 (2019 Agreement); Dkt. No. 35-1 (2019 Schedule A).

An analysis of these contracts is an essential step in resolving the present dispute.

**A.  2012 Master Services Agreement Between Defendants and WSOL**

As mentioned previously, Defendants are engaged in the travel management business and

provide booking services for businesses and individuals. Defendants Egencia and Expedia are related companies; Egencia is wholly owned by Expedia, Inc., which is wholly owned by Expedia Group, Inc. Dkt. No. 1 at ¶ 10.

In October 2012, Defendant Egencia and WSOL entered a Master Services Agreement ("MSA") whereby WSOL agreed to provide outsourced customer service support to Defendant. Dkt. No. 25 at 3; Dkt. No. 26-1 (MSA). The MSA states that it "is not intended to create any relationship other than Vendor as an independent contractor performing Services covered by this Agreement and Egencia as the Party contracting with Vendor for those services." Dkt. No. 26-1 at ¶ 20.4. The relationship between Defendant and WSOL is not exclusive, and either company may agree to the same relationship with other companies. *Id.* at ¶ 20.2.

**B. Plaintiff and WSOL Agreements and Schedules**

Plaintiff began working as a travel consultant for Defendants in July 2014. Dkt. No. 1 at ¶ 28. According to Plaintiff, she communicates with Defendants' customers and answers questions regarding ticket, hotel, and vehicle reservations. *Id.* at ¶¶ 17–19. But, as previously stated, Plaintiff never directly contracted with Defendants.

Instead, from 2014 through 2019, Plaintiff signed several agreements and schedules with WSOL. Both parties agree, however, that the current controlling agreement is the 2019 Agreement, even though it was formalized after Plaintiff filed the instant action. *See* Dkt. No. 25 at 5–6; Dkt. No. 31 at 3.[3] The 2019 Agreement was signed on February 26, 2019 and, at the same

---

[3] The 2019 Agreement superseded an earlier 2016 Agreement thanks to the Entire Understanding Section, which states, "any and all prior agreements, understandings, and representations are hereby terminated and canceled in their entirety and are of no further force and effect." Dkt. No. 26-5 at 8.

time, Plaintiff signed the 2019 Schedule A. Plaintiff, however, states that these documents arrived in separate emails from WSOL's president, indicating that she first received the 2019 Schedule A and then received the 2019 Agreement. *See* Dkt. No. 43 at ¶¶ 5–6.

Substantively, the 2019 Agreement establishes the terms of engagement between Plaintiff and WSOL and contains a number of provisions germane to the current motion, including a broad arbitration clause (Section VII "Mutual Arbitration Provision"), *see infra* at 6 n.6, an indemnification clause (Section VI "Indemnity Provision"), *see infra* at 6 n.7, a delegation clause[4] (Section VII.2 "Delegation Clause"), *see infra* at 7 n.9, a class action waiver, a choice of law section (Section X "Governing Law Section"), and an integration clause (Section XIV "Entire Understanding Section"). Dkt. No. 26-5. The 2019 Agreement does not specifically reference Defendants. Instead, it outlines Plaintiff's contracted services to WSOL, including that she will be presented with opportunities to work on programs established for the benefit of WSOL's clients. *Id.* at 2 (Section I.2). When engaged by a specific program, the 2019 Agreement establishes that Plaintiff "agrees to perform the services defined in Schedule A" whose parameters are "established by the client [in this case Egencia], not WSOL." *Id.* The 2019 Schedule A, in turn, outlines the duties of a travel agent assisting Egencia customers on the "Egencia Program," the term of engagement, the compensation rate, and the provisions for certifying a contractor on the Egencia's

---

[4] The Delegation Clause is located within the Mutual Arbitration, as subsection 2 within Section VII. *See* Dkt. No. 26-5 at 6. Delegation clauses, in general and as discussed below, *see infra* at 8–9, are separate agreements "to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010); *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). As the Supreme Court has explained, "[w]e have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr.*, 561 U.S. at 68–69.

4

systems. Dkt. No. 35-1.

**C. Plaintiff's Claims**

The foundation of Plaintiff's suit is her claim that Defendants violated the FLSA by failing to pay travel consultants overtime wages for work done in excess of 40 hours per week. Dkt. No. 1 at ¶¶ 67–70. She alleges that travel consultants are entitled to overtime wages because they are Defendants' employees. *Id.* at ¶ 31. Further, Plaintiff claims that the Defendants intentionally misclassified her and other travel consultants as independent contractors in order to avoid paying them overtime wages. *Id.* at ¶¶ 47, 48, 51.

### III. DISCUSSION

Plaintiff proffers two arguments in opposition to Defendants' motion: (1) the 2019 Agreement, including the agreement to arbitrate, is unenforceable as unconscionable because the Indemnification Provision is an illegal fee-shifting provision that deprives her of substantive and overtime rights under the FLSA, Dkt. No. 31 at 4–10, and (2) even if a valid arbitration clause exists, Defendants may not enforce it as nonsignatories to the 2019 Agreement, *id.* at 10–16.[5]

---

[5] Throughout briefing these arguments, the parties make numerous claims as to which law, federal or state, applies to which claims. The 2019 Agreement contains (1) the Governing Law Section directing that "[t]he laws of the State of Texas shall govern the validity of this Agreement, the construction of its terms and the interpretation of the rights and duties of the parties hereto," Dkt. No. 26-5 at 7, and (2) within the Mutual Arbitration Provision a choice of law provision stating that the "arbitration agreement is governed by the Federal Arbitration Act . . .," *id.* at 6. But, "federal law governs the arbitrability question by default [when] the Agreement is covered by the FAA . . . and the parties have not clearly and unmistakably designated that nonfederal *arbitrability* law applies." *Brennan*, 796 F.3d at 1129 (emphasis in original) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). Here, not only have the parties included an arbitration provision that would normally be covered by the FAA, the Mutual Arbitration Provision itself states that it should be construed under the federal FAA. Thus, the Court will apply federal law, including the FAA, when addressing the Mutual Arbitration Provision but Texas state law when construing the validity, construction, or interpretation of the underlying agreement, including whether Defendants may enforce the Mutual Arbitration Provision as a third-party beneficiary. *See Lagrone v. Advanced Call Ctr. Techs., LLC*, No. 13-2136, 2014 WL 4966738, at *4 (W.D. Wash. Oct. 2, 2014) (explaining that in cases based on federal question jurisdiction, federal common law supplies the choice of law rules and directs federal

**A. Enforceability of the Mutual Arbitration Provision**

In response to Defendants' evocation of the Mutual Arbitration Provision,[6] Plaintiff claims that the Provision is invalid as unconscionable because, as Plaintiff interprets the Indemnification Provision,[7] "[e]ven if Defendants lose in arbitration, Defendants are still entitled to recover from

---

courts to enforce the parties' contractual choice of law if the issue at hand, such as here, "is one which the parties could have resolved by an explicit provision in their agreement directed to that issue" (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (AM. LAW INST. 1971))); *see also Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1296–97 (9th Cir. 1997).

[6] The relevant section of the Mutual Arbitration Provision provides:
   VII) Mutual Arbitration Provision
   1. Contractor and WSOL, LLC mutually agree to resolve any justiciable disputes between them through final and binding arbitration instead of filing a lawsuit in court. This arbitration agreement is governed by the Federal Arbitration Act ("FAA") and shall apply to any and all claims arising out of or relating to this Agreement, Contractor's classification as an independent contractor, Contractor's provision of Contracted Services, the payments received by Contractor providing services, the termination of this Agreement, and all other aspects of Contractor's relationship with WSOL, LLC, past, present or future, whether arising under federal, state or local statutory and/or common law, including without limitation harassment, discrimination or retaliation claims and claims arising under or related to the Civil Rights Act of 1964 (or its state and local equivalents), Americans With Disabilities Act (or its state or local equivalents), Age Discrimination In Employment Act (or its state and local equivalents), Family Medical Leave Act (or its state and local equivalents), or Fair Labor Standards Act (or its state and local equivalents), state and local wage and hour laws, state and local statutes or regulations addressing the same or similar subject matters, and all other federal, state or local claims arising out of or relating to Contractor's relationship or the termination of that relationship with WSOL, LLC.
Dkt. No. 26-5 at 6

[7] The relevant sections of the Indemnification Provision provide:
   VI) Indemnification
   1. Company agrees to indemnify, protect and hold harmless Contractor from any and all claims, demands, damages, suits, losses, liabilities and causes of action arising directly from WSOL, LLC's actions arranging and offering the Contracted Services to Contractor.
   2. Contractor agrees to indemnify, protect and hold harmless WSOL, LLC, including all parent, subsidiary and or affiliated companies, as well as its and their past and present successors, assigns, officers, owners, directors, agents, representatives, attorneys, and employees, from any and all claims, demands, damages, suits, losses, liabilities and causes of action arising directly or indirectly from, as a result of or in connection with, the actions of Contractor and his/her performance of Contracted Services under this Agreement. Contractor's obligations hereunder shall include the cost of defense, including attorneys' fees, as well as the payment of any final judgment rendered against or settlement agreed upon by WSOL, LLC or its parent, subsidiary and/or affiliated companies.
Dkt. No. 26-5 at 5–6.

Plaintiff their attorneys' fees and costs." *Id.* at 5.[8]

To Plaintiff's attack on the Mutual Arbitration Provision, Defendants reply that the parties have agreed to delegate questions of arbitrability to the arbitrator to decide, not the Court, through the Delegation Clause.[9] *See* Dkt. No. 34 at 3–4. Plaintiff counters Defendants' reliance on the Delegation Clause by claiming that it too is invalid based on the same fee-shifting objections to the Indemnity Provision. Dkt. No. 42 at 2. As she explains, "the illegal indemnity provision applies to all disputes between the Parties, including to those subject to the delegation clause." *Id.* Thus, the question for the Court is whether the Court or an arbitrator may determine the validity of the Mutual Arbitration Provision given the Delegation Clause assigning that question to the arbitrator. The Court concludes that questions of arbitrability raised by the Plaintiff go to the contract as a whole and are therefore for the arbitrator to decide.

The FAA provides that any arbitration clause within its scope "shall be valid, irrevocable, and enforceable," 9 U.S.C. § 2, and permits a party "aggrieved by the alleged . . . refusal of another to arbitrate," *id.* at § 4, to "petition any federal district court for an order compelling arbitration in

---

[8] Defendants dispute Plaintiff's interpretation of the Indemnity Provision and its characterization as an illegal fee-shifting provision. First, they claim it is bilateral because it "allows the arbitrator to award fees to Plaintiff under the FLSA if found to be appropriate." Dkt. No. 34 at 5. Second, because it is sufficiently narrow to pass muster. Finally, third, the "arbitrator has authority to interpret the bilateral indemnity clause in a manner consistent with the law." *Id.* Plaintiff, in turn, disputes this interpretation. *See* Dkt. No. 42 at 3. The Court need not reach the merits of the Indemnity Provision, however, as it holds this is a question for the arbitrator to answer.

[9] The relevant section of the Delegation Clause provides:
   VII) <u>Mutual Arbitration Provision</u>
      2. Any claims, disputes or controversies between WSOL, LLC and the Contractor, whether arising out of the terms of this Agreement or otherwise, shall be solely determined and settled by arbitration conducted in Dallas County, Texas, in accordance with the rules of the American Arbitration Association ("AAA Rules") and the judgment upon award may be entered in any court having jurisdiction thereof.
Dkt. No. 26-5 at 6

7

the manner provided for in the agreement," *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

"Like other contracts," however, arbitration clauses "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). A plaintiff seeking to invalidate an arbitration clause must be attacking the validity of the arbitration clause itself, separate and apart from the rest of the agreement. As the Supreme Court has explained,

> There are two types of validity challenges under § 2: "One type challenges specifically the validity of the agreement to arbitrate," and "[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid."

*Rent-A-Ctr.*, 561 U.S. at 70 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006)). A challenge specifically to the agreement to arbitrate is for a federal court to "consider the challenge before ordering the compliance with the agreement." *Id.* at 71. In the case of a challenge to the contract as a whole, however, the federal court is to enforce the agreement to arbitrate. *Id.* at 70–71.

Parties may delegate "gateway" questions of arbitrability to an arbitrator. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527, 529 (2019); *Rent-A-Ctr.*, 561 U.S. at 68–69; *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see also McLellan v. Fitbit, Inc.*, No. 16-00036, 2017 WL 4551484, at *1 (N.D. Cal. Oct. 11, 2017). In order to delegate such questions, the parties must do so "clearly and unmistakably." *Henry Schein*, 139 S. Ct. at 527, 530; *Brennan*, 796 F.3d at 1130. Under Ninth Circuit precedent, incorporation of reference to the

American Arbitration Association's ("AAA") rules in a delegation clause "constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability," as one of the AAA arbitration rules specifically provides that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement." *Id.* at 1130; *see also McLellan*, 2017 WL 4551484, at *2 (confirming that *Brennan*'s holding as to the incorporation of the AAA rules extends to both sophisticated and unsophisticated parties).

Delegation clauses are simply "additional, antecedent agreement[s] the party seeking arbitration asks the federal court to enforce" and thus "the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Ctr.*, 561 U.S. at 70. Delegation clauses, therefore, are enforceable and "valid under § 2 'save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* (quoting 9 U.S.C. § 2). In other words, the same type of validity challenges a party would use to attack an arbitration clause apply to delegation clauses. Again applicable, then, is the direction that questions challenging the validity of the delegation clause itself are for the federal court to decide, while challenges to the contract as a whole are for the arbitrator to decide. *Id.* at 70–71; *see also Brennan*, 796 F.3d at 1133. Thus, the general rule of "specificity in the plaintiff's challenge" applies "'requir[ing] the basis of the challenge [to the Delegation Clause] to be directed *specifically* to the agreement to arbitrate [at issue] before the court will intervene.'" *Brennan*, 796 F.3d at 1132 (emphasis in original) (quoting *Rent-A-Ctr.*, 561 U.S. at 71).

In the present case, the Delegation Clause expressly cites the AAA rules. *See* Dkt. No. 26-5 at 6 ("[a]ny claims, disputes or controversies between WSOL, LLC and the Contractor . . . shall

9

be solely determined and settled . . . in accordance with the rules of the American Arbitration Association"). Thus, the parties have delegated the question of arbitrability to the arbitrator, so long as the Delegation Clause itself is not invalid on other grounds, such as Plaintiff's argument based on the Indemnity Provision.

Here, however, Plaintiff has proven by her continual resurrection of her Indemnity Provision complaint that it is not specific to either the Delegation Clause or the Mutual Arbitration Provision. As the Ninth Circuit has established, the "specificity in challenge" rule requires the attack on an arbitration or delegation clause to be "a distinct question from the validity of the contract as a whole." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 998 (9th Cir. 2010). Nowhere in her complaint, response to the motion, or *sur-reply* has Plaintiff claimed an issue directed specifically at either of these provisions. For example, Plaintiff does not claim a "fraud in the inducement," or something akin, to the "precise agreement to arbitrate at issue" separate and apart from the claim that the whole contract is unconscionable due to the Indemnity Provision. *Rent-A-Center*, 561 U.S. at 71. At its core, Plaintiff's argument is still that the Indemnification Provision is an illegal fee-shifting provision, contrary to the FLSA, that infects the entire 2019 Agreement. *See, e.g.*, Dkt. No. 31 at 4–7.

That she is addressing the contract as a whole is solidified by her arguments that "[g]iven the lack of a severability clause, the entire agreement, including the arbitration provision, is unenforceable." Dkt. No. 31 at 9. Therefore, the Court finds that Plaintiff's objection addresses the contract as a whole and is not specific to either of the Mutual Arbitration Provision or the Delegation Clause, meaning that the question of arbitrability is for the arbitrator, not the Court, to address.

**B. Defendants are Third-Party Beneficiaries of the Contract**

Having determined that the question of the validity of the Mutual Arbitration Provision is for the arbitrator, the Court next considers whether Defendants may compel arbitration even though they are not signatories to the 2019 Agreement. Both parties agree that, under Texas law,[10] third-party beneficiaries may enforce arbitration clauses in contracts to which they are not a party, *see* Dkt. No. 25 at 8; Dkt. No. 31 at 10–11, but differ on whether Defendants are third-party beneficiaries.

According to Plaintiff, in order for Defendants to qualify as third-party beneficiaries, WSOL and Plaintiff must have entered the 2019 Agreement directly for Defendants' benefit and the intent to create a third-party beneficiary must be clearly written into the contract. Dkt. No. 31 at 10–12; Dkt. No. 42 at 4–6.

Defendants reply that they constitute third-party beneficiaries because they are owed a legal duty by WSOL, under the MSA, and WSOL then contracted with Plaintiff to fulfill that duty. *See* Dkt. No. 25 at 8–10; Dkt. No. 34 at 8–9.[11] Furthermore, Defendants point out that the 2019 Schedule A "specifically identifies Egencia by name," and shows clear intent that the 2019 Agreement was meant to directly benefit Defendants. Dkt. No. 34 at 8.

In response to Defendants' reliance on the 2019 Schedule A, Plaintiff claims that Schedule

---

[10] The Court has already determined that Texas law applies to this question under federal choice of law principles. *See supra* 5–6 at n.5.

[11] Defendants also argue in the alternative that they may enforce the agreement through equitable estoppel. Dkt. No. 25 at 8. Since the Court determines that Defendants are third-party beneficiaries, it need not address equitable estoppel.

11

A and the 2019 Agreement constitute "separate and independent documents." Dkt. No. 42 at 4–5. Since the 2019 Schedule A arrived in a separate email from the 2019 Agreement, Plaintiff argues the Agreement did not formally incorporate the Schedule and, therefore, the Court should not consider the Schedule when determining whether Defendants constitute third-party beneficiaries.

Thus, the Plaintiff raises two questions: (1) is the 2019 Schedule A incorporated into the 2019 Agreement so that Defendants may rely upon the 2019 Schedule A to show intent to benefit them and (2) with the benefit of the 2019 Schedule A, does the 2019 Agreement show a sufficient intent to benefit Defendants to make them third-party beneficiaries.

*1. The 2019 Schedule A is incorporated by reference into the 2019 Agreement*

Reference in a contract to a second document may incorporate that document so long as the contract "'plainly refers' to the incorporated document." *Bob Montgomery Chevrolet, Inc. v. Dent Zone Companies*, 409 S.W.3d 181, 189 (Tex. App. 2013) (quoting *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968)). The contract must refer in plain terms and with "sufficient specificity" to the document and must show the parties intended for the document to become part of the agreement. *Castillo Info. Tech. Servs., LLC v. Dyonyx, L.P.*, 554 S.W.3d 41, 48 (Tex. App. 2017); *Bob Montgomery Chevrolet, Inc.*, 409 S.W.3d at 189.

In this case, both the 2019 Agreement and the 2019 Schedule A were signed by Plaintiff on February 26, 2019. Dkt. No. 26-5 at 8; Dkt. No. 35-1 at 4. The 2019 Agreement refers specifically to Schedule A more than once. For example, the 2019 Agreement states:

> The Contractor will supply any equipment, tools, or materials necessary to complete the services performed by the Contractor under this Agreement, except as specified in *Schedule A*. The specific Contracted Services of each contract project will be defined in *Schedule A*.
> . . .

> Notwithstanding the foregoing, Contractor agrees to maintain a strong client rating and other key performance metrics as defined in *Schedule A*.

Dkt. No. 26-5 at 2 (emphasis added).

These references, along with the fact that the documents were signed simultaneously, establish that the parties' intended to incorporate the 2019 Schedule A into the 2019 Agreement.

The fact that the documents arrived in separate emails does not change this determination. It is not required that two documents be attached in the same email for one of the documents to be incorporated by reference into the other. Because the 2019 Agreement refers in plain terms to Schedule A it is clear that Schedule A was intended to be part of the agreement. Therefore, the Court finds that the 2019 Schedule A is incorporated by reference into the 2019 Agreement and both documents should be read and understood together. *Castillo*, 554 S.W.3d at 50; *Bob Montgomery Chevrolet, Inc.*, 409 S.W.3d at 189.

2. *There is a demonstrated intent to make Defendants third-party beneficiaries*

Despite voicing some caution in forcing "a party . . . to arbitrate absent a binding agreement to do so," *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 632 (Tex. 2018), the Texas Supreme Court recently reaffirmed that third-party beneficiaries constitute a situation in which "arbitration with non-signatories may be required." *Id.* at 633 (*citing In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005)). Under Texas law, third parties who benefit from a contract containing an arbitration clause may enforce that agreement "so long as 'the parties to the contract intended to secure a benefit to that third-party and entered into the contract directly for the third-party's benefit.'" *Id.* at 635 (quoting *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006)). "If parties to a contract agree to confer certain contractual benefits on a third-party, that third-party may invoke the contract's arbitration clause." *In re Rolland*, 96 S.W.3d 339,

344 (Tex. App. 2001).

Upon construing the 2019 Agreement and the 2019 Schedule A together, it is clear that Defendants were granted contractual benefits from the 2019 Agreement between Plaintiff and WSOL. The 2019 Agreement states, "Contractor understands and agrees that the parameters of each contract project are established by the *client*, not WSOL" and that "[t]he specific Contracted Services of each contract project will be defined in *Schedule A*." Dkt. No. 26-5 at 2 (emphasis added). Thus, it is clear that what is being contracted for are services to be delivered to WSOL's clients to the client's specifications and satisfaction.

The 2019 Schedule A, in turn, fills in the blank of which client the travel consultant will be serving. Schedule A is titled the "Egencia Program" and refers to "Egencia procedures and processes" specifically. Dkt. No. 35-1 at 2. Under its auspices, WSOL's independent contractors provide Egencia with customer service support via "chat, email, inbound phone and outbound phone." Dkt. No. 35, Ex. A. Therefore, while the 2019 Agreement establishes the general bounds between Plaintiff and WSOL, the 2019 Schedule A determines the substantive work to be performed by Plaintiff for Defendants and their customers. Thus, both documents when read together establish that they were executed for the specific purpose of fulfilling WSOL's obligations to Defendants. Further, it is evident that Plaintiff knew she was agreeing to benefit Defendants when she agreed to perform customer services on behalf of Defendants for their customers.

Defendants are third-party beneficiaries to the 2019 Agreement and, as such, entitled to compel arbitration.

**C. The Parties are to Arbitrate in Dallas County, Texas**

Having decided that an arbitrator, not the Court, must address Plaintiff's challenges to the

14

contract and that Defendants as third-party beneficiaries may enforce the agreement to arbitrate, the Court turns to the question of where the arbitration should take place.

Section 4 of the FAA provides that when a court orders parties to proceed to arbitration pursuant to an agreement, "[t]he hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4. Section 4, however, also allows aggrieved parties to "petition any United States district court which, save for such agreement, would have jurisdiction under title 28." *Id.* The Plaintiff in this case has elected to proceed in the Western District of Washington, and neither party contests the Court's jurisdiction to conduct the current proceedings. But the parties provided in the Mutual Arbitration Provision that the situs of arbitration should be in Dallas County, Texas, and Section 4 twice states that "the court shall make an order directing the parties to proceed to arbitration *in accordance with the terms of the agreement.*" *See id.* (emphasis added).

When confronted with this situation, many courts in this Circuit point to *Cont'l Grain Co. v. Dant & Russell*, 118 F.2d 967 (9th Cir. 1941), for the proposition that Section 4's "language prohibits a district court from ordering parties to arbitrate outside of the district in which a motion to compel is filed." *Lexington Ins. Co. v. Centex Homes*, 795 F. Supp. 2d 1084, 1091 (D. Haw. 2011); *see also, e.g.*, *Seaman v. Private Placement Capital Notes II, LLC*, No. 16-00578, 2017 WL 1166336, at *5 (S.D. Cal. Mar. 29, 2017); *Homestake Lead Co. of Missouri v. Doe Run Res. Corp.*, 282 F. Supp. 2d 1131, 1143 (N.D. Cal. 2003). On the other hand, the Fifth Circuit, when confronted with a case that presents this dilemma, distinguished *Continental Grain* and held that a district court may enforce arbitration in a venue outside of its district where, as here, the party seeking to avoid arbitration initiated the suit in the nonagreed upon venue. *Dupuy–Busching*

*General Agency, Inc. v. Ambassador Insurance Co.*, 524 F.2d 1275 (5th Cir. 1975).

Other courts in this Circuit have followed the Fifth Circuit's decision in *Dupuy*. In *U.S. ex rel. Turnkey Const. Servs., Inc. v. Alacran Contracting, LLC*, the Eastern District of California distinguished *Continental Grain*, in a case where, as here, the party seeking to enforce arbitration was not the one who chose to file the petition in a district other than the one agreed upon by the parties. No. 13-01654, 2013 WL 6503307, at *1 (E.D. Cal. Dec. 11, 2013) ("[t]he instant case is distinguishable, however, in that it is not Defendant—the party seeking to enforce the terms of the agreement—but rather Plaintiff, who invoked this court's jurisdiction by preemptively filing suit in a jurisdiction apart from that set forth in the agreement"). Additionally, *Turnkey* cited a more recent Ninth Circuit case which arguably calls into question the Circuit's commitment to *Continental Grain*. *See id.* at *1 (citing *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1271 n.1 (9th Cir. 2002)).

Like the Court in *Turnkey*, this Court finds that it would be unjust to allow Plaintiff to subvert the agreed upon venue for arbitration by filing her case in a district other than the one in which she agreed arbitration would take place. Therefore, the Court will order the parties to conduct arbitration in Dallas County, Texas. Such a result prevents "a party [from] sidestep[ping] a forum selection clause by filing in a district other than that specified in the agreement." *Turnkey*, 2013 WL 6503307 at *3. This result has the additional benefit of preventing forum shopping and advancing the "strong public policy in favor of enforcing arbitration agreements." *Id.* (citing *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 532–33 (2012) (Per Curiam)). Finally, it accords with the direction of Section 4 itself, which states in two places that federal district courts should direct parties to arbitrate their disputes "in the manner provided for in [their] agreement"

16

and "in accordance with the terms of the[ir] agreement." 9 U.S.C. § 4. After all, when faced with a conflict within a statute such as this, the Court can do no more than attempt to fulfill the underlying objective of the statute, which in the FAA's case "requires courts to enforce the bargain of the parties to arbitrate." *Marmet Health Care Ctr.*, 565 U.S. at 532–33 (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985); *see also Henry Schein*, 139 S. Ct. at 529 ("[u]nder the Act, arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms"); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018) ("[t]he law is clear . . . Congress has instructed federal courts to enforce arbitration agreements according to their terms"); *id.* at 1621 (citing 9 U.S.C. § 4) ("[n]ot only did Congress require courts to respect and enforce agreements to arbitrate; it also specifically directed them to respect and enforce the parties' chosen arbitration procedures"); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citing *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)) ("courts must . . . enforce [arbitration agreements] according to their terms").

## IV.   CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendants' Motion to Dismiss; GRANTS Defendants' motion to Compel Plaintiff to Participate in Arbitration; STAYS the current proceedings; and ORDERS the parties to conduct arbitration in Dallas County, Texas according to the terms of the 2019 Agreement.

DATED this 17th day of September, 2019.

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE